## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

BILLY HOOVER,

      Petitioner,

  v.

TONY TRIERWEILER,

      Respondent,

_____/

Case No. 1:17-CV-11949
HON. THOMAS L. LUDINGTON
UNITED STATES DISTRICT COURT

## OPINION AND ORDER DENYING THE AMENDED PETITION FOR WRIT OF HABEAS CORPUS, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

On June 19, 2017, Petitioner Billy Hoover filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On October 2, 2017, Hoover filed a motion for leave to file an amended petition. ECF No. 6. That motion was granted. Petitioner was convicted by a jury in the Saginaw County Circuit Court of first-degree home invasion, Mich. Comp Laws § 750.110a(2); torture, Mich. Comp Laws § 750.85; aggravated stalking, Mich. Comp Laws § 750.411i; and being a fourth felony habitual offender, Mich. Comp Laws § 769.12. Petitioner was sentenced to concurrent sentences of five to twenty years on the home invasion conviction, twenty to thirty years on the torture conviction, and fifteen months to five years on the stalking conviction. Petitioner alleges that he was denied the right to present a defense, that he was denied the effective assistance of trial counsel, that the evidence was insufficient to convict, that the judge violated the *Ex Post Facto* clause in assessing fees at sentencing pursuant to the Crime Victim's Rights Act, that the prosecutor committed misconduct, and that appellate counsel was ineffective. The Respondent has filed an answer to the petition, asserting that the claims are procedurally defaulted and/or lack merit. For the following reasons, the amended petition, ECF No. 7, will be denied.

# I.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant assaulted the victim, with whom he had had an unstable dating relationship, on September 30, 2010. She testified that defendant called her and stated that her house was damaged and needed repair. She drove to her house and discovered that the front door was "jammed" and that the lock was no longer functional. She called defendant's mother to complain that he had damaged her house. During this conversation, defendant entered the victim's house uninvited. Defendant spoke with his mother on the telephone and decided to leave the house. About 60 to 90 minutes later, defendant returned to the victim's house uninvited with two friends. The victim testified that she and defendant got into an argument and that defendant grabbed her shirt and exposed her breast to his friends. Defendant then removed a knife from her kitchen and stated his intent to slash her tires. Defendant and his two friends went outside, and the victim remained inside her house to call the police. After the victim called the police, defendant reentered her house. The two continued arguing, and at some point defendant squeezed the victim's neck in a "choke hold" from behind. The victim became light headed and collapsed to the floor. Defendant then held a pillow against her face while telling someone on the telephone that he was going to kill the victim. The police arrived at the victim's house during the assault, thereby bringing the assault to a sudden end. The responding officer testified that the victim was lying on the floor struggling to breathe when he arrived. The victim eventually regained her breath and identified defendant as her assailant. The officer immediately arrested defendant.
>
> At trial, defendant called his two friends as witnesses. Each friend denied the victim's version of the events, testifying that she was often "jealous" of defendant. Defendant's theory of the case was that the victim fabricated the assault because of a heated disagreement between the two at a gas station on the afternoon of September 30.

*People v. Hoover*, No. 308115, 2013 WL 45647, at * 1 (Mich. Ct. App. Jan. 3, 2013).

Petitioner's conviction was affirmed on appeal. *Id., leave denied* 495 Mich. 1004, 846 N.W.2d 388 (2014). Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Hoover,* No. 10-035183-FC (Sept. 30, 2015). The Michigan appellate courts

denied the Petitioner leave to appeal. *People v. Hoover*, No. 331914 (Mich. Ct. App. July 25, 2016); *leave denied* 500 Mich. 1000, 895 N.W.2d 511 (2017).

In his amended habeas petition, Petitioner seeks habeas relief on the following grounds:

I. Petitioner's due process right to present a defense was violated where the trial court excluded a letter written by the complainant to defense counsel indicating that she did not want petitioner prosecuted. The decision to exclude this letter also violated petitioner's right to confrontation where defense counsel was unable to effectively impeach the witness regarding the letter and the defense theory of the case.

II. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel where counsel failed to subpoena the record custodian to authenticate the complainant's phone records, which would have substantially contradicted the complainant's story and supported the defense theory that complainant had fabricated the alleged incident.

III. The trial court violated the Ex Post Facto Clauses of both the Federal and Michigan Constitutions when the trial court assessed a statutory $ 130.00 Crime Victim's Rights Act fee when the statute in effect at the time of the commission of the sentencing offense provided for a $ 60.00 assessment.

IV. Petitioner's due process rights were violated where there was insufficient evidence presented to show that the victim suffered a substantial alteration of mental function to sustain a conviction of torture. [Mich.Comp.Laws Ann. § 750.85].

V. Petitioner's due process rights were violated where there was insufficient evidence presented to show that the petitioner "*broke into a dwelling*" to sustain a conviction of 1st degree home invasion. [Mich.Comp.Laws Ann. § 750.110a].

VI. The prosecutor discussed prejudicial evidence during her opening statements but failed to produce evidence to support the statements, thereby violating petitioner's due process rights.

VII. Petitioner's Sixth Amendment right to counsel was violated when counsel failed to investigate and obtain the medical record pertaining to medical treatment or non-treatment.

VIII. Petitioner's Sixth Amendment right to counsel was violated when counsel was absent from the second half of the preliminary examination.

IX. Petitioner's Sixth Amendment right to the effective assistance of appellate counsel was violated when appellate counsel failed to raise a claim of insufficient

evidence to convict of first degree home invasion on direct appeal, thereby establishing the requisite "cause" of Mich. Ct. Rule 6.508(D)(3)(a), and as a result petitioner was prejudiced by the more onerous standard of review contained within Mich.Ct.Rule 6.508(D).

## II.

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Court notes that the Michigan Court of Appeals reviewed and rejected the petitioner's first claim under a plain error standard because he failed to preserve the issue as a constitutional claim at the trial court level.[1] The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017). The petitioner raises nine claims in his petition.

### III.

### A.

Petitioner first argues that he was denied his right to present a defense when the judge refused to permit Petitioner to question the victim about a letter that she wrote to defense counsel on July 8, 2011, in which the victim indicated that she no longer wanted to prosecute Petitioner. The trial judge excluded the letter on the grounds that it was irrelevant. (Tr. 10/27/11, pp. 72-75). The Michigan Court of Appeals rejected the claim, first finding that the letter was irrelevant:

---

[1] Respondent urges this Court to deny this claim on the ground that it is procedurally defaulted because defense counsel objected to the exclusion of the evidence only on state law grounds but did not argue that the exclusion of this evidence violated the petitioner's constitutional right to present a defense. Counsel, did, however, seek the admission of this evidence, albeit only on state evidentiary grounds. Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. The Court believes that in light of the complexities of the procedural default issue, it would be easier to proceed to the merits of the claim.

Here, the letter indicated that the victim did not want to continue the prosecution against defendant. Defendant argues that the letter was relevant because it supported the defense theory that the victim had fabricated the charges out of jealousy or spite and also contradicted the victim's trial testimony because someone who had endured what she claims to have occurred would not likely ask the prosecutor to dismiss the case. A witness's credibility is a material fact of consequence to the determination of an action. However, the trial court did not abuse its discretion by excluding the victim's letter in this instance because the letter was not "probative." It did not make the victim's credibility more or less probable. The letter did not indicate that the alleged assault never occurred. Rather, the letter indicates that the victim believed that the personal costs of prosecuting defendant outweighed any personal benefit that she may receive from his prosecution. The victim's individual view of the nature of criminal proceedings bears no relationship to her credibility as a witness. Moreover, the victim's mention of a personal protection order suggests that the victim still had reason to fear defendant, which is consistent with the actual occurrence of the assault. For these reasons, the letter was not "probative" with respect to the victim's credibility. We conclude that the trial court did not abuse its discretion by excluding the letter as irrelevant.

*People v. Hoover*, 2013 WL 45647, at * 2 (internal citations and quotations omitted).

The Michigan Court of Appeals then concluded that the exclusion of this letter did not violate the Petitioner's right to present a defense:

The exclusion of the letter did not deny defendant his right to present a defense. Defendant was able to challenge the victim's credibility in other respects, such as by comparing her trial testimony to either her previous testimony at the preliminary examination or her statement to the investigating detective. The exclusion of the letter, therefore, did not deny defendant his ability to challenge the victim's credibility. Moreover, even if the letter was relevant, it was only minimally relevant for the reasons explained above. Thus, exclusion of the letter did not "significantly undermine" defendant's ability to question the victim's credibility. Accordingly, we conclude that the trial court did not plainly err by excluding the letter.

*Id.,* at * 3 (internal citation omitted).

Just as an accused has the right to confront prosecution witnesses in order to challenge their testimony, he or she also has the right to present his or her own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967). *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986) ("[W]hether rooted directly in

- 6 -

the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'") (internal citations omitted). However, an accused in a criminal case does not possess the unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges in criminal cases "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511–12 (6th Cir. 2003).

In the present case, the trial court's decision to prevent defense counsel from questioning the victim about her letter to counsel did not violate Petitioner's right to confrontation or due process, because the evidence was only remotely relevant to the victim's credibility or her motivation to fabricate the allegations against Petitioner. *See Farley v. Lafler,* 193 F. App'x. 543, 546 (6th Cir. 2006). Although "[t]he Confrontation Clause places meaningful limits on a trial judge's ability to exclude evidence under a state's rules of evidence, those limits are not relevant

when the information in question has virtually no probative value." *Id.* at 547. The victim did not indicate in her letter that her allegations against Petitioner were false or that she had any animus against him, only that she no longer wished to prosecute him. The letter was thus only marginally probative to challenging the victim's credibility, hence, the decision to exclude the letter did not violate Petitioner's right to present a defense.

More importantly, the letter was cumulative of additional evidence that was used to impeach the victim's credibility. The victim admitted at trial that she did not seek medical treatment for her injuries. Tr. 10/27/11 at 67, 80. The victim admitted that she had obtained personal protection orders against five or six different men. *Id.,* p. 63. Although the victim claimed that her tire had been slashed with a knife, presumably by Petitioner, she admitted she never showed the tire or the knife to the police. *Id.* at 68–70. The victim denied telling Tameka Greene that she was jealous of Petitioner. *Id.* at 71–72. Officer Blake Hiben testified that he responded to the 911 call. Although the victim indicated that Petitioner had assaulted her, she declined transportation to the hospital. Tr. 10/26/11 at 144. Petitioner presented two defense witnesses, who challenged the victim's version of events and claimed she made these allegations up because she was jealous of Petitioner.

In light of the fact that the victim's letter would have been cumulative to other impeachment evidence, its exclusion from evidence did not violate the Petitioner's right to present a defense or to a fair trial. *See Washington v. Renico*, 455 F.3d 722, 728-29 (6th Cir. 2006).

## B.

Petitioner alleges in his second, seventh, and eighth claims that he was denied the effective assistance of trial counsel. A defendant must satisfy a two prong test in order to establish the denial of the effective assistance of counsel. First, the defendant must establish that, considering all of

the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" within the meaning of the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. Stated differently, a defendant must overcome the presumption that, under the circumstances, counsel's challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his or her defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The burden is on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* On habeas review of a state court conviction,

"[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In his second claim, Petitioner alleges that trial counsel was ineffective for failing to authenticate the telephone record from the victim's cellular phone provider, which prevented counsel from impeaching the victim with this record. Petitioner argues that the victim's cellular phone record could have been used to impeach her testimony that she heard Petitioner speak into a telephone that he was not going to "save" the victim and that he was going to kill her.

The Michigan Court of Appeals rejected the petitioner's claim:

> In this case, defendant cannot show that a different outcome reasonably would have resulted but for trial counsel's failure to authenticate the telephone record. Defendant's argument is flawed because it presumes that the victim testified that defendant used *her cellular telephone* while holding the pillow against her face. However, the victim did not testify at trial that defendant used her cellular telephone. Rather, the victim repeatedly testified that defendant used "the phone." It is possible that she was referring to her cellular telephone, defendant's telephone, or even a landline telephone. Further, the victim's use of the term "the phone" is in contrast to her other testimony about "my phone." Thus, the absence in the telephone record of a call made during the time when the assault allegedly occurred would have had minimal impeachment value. We cannot conclude that its authentication and introduction at trial would have resulted in a different outcome by significantly undermining the victim's credibility. The telephone record was not "critical to the issue" of the victim's credibility, so defense counsel was not constitutionally deficient for failing to authenticate it.

*People v. Hoover*, 2013 WL 45647, at * 3 (emphasis in original) (internal citations omitted).

Petitioner is unable to show that he was prejudiced by counsel's failure to introduce the victim's cellular telephone call records, in order to impeach the victim's testimony, in light of the fact that Petitioner could have used another cell phone or a land-line phone to make this call. *See*

*Daniel v. Palmer*, 719 F. Supp. 2d 817, 829 (E.D. Mich. 2010), *rev'd on other grounds sub nom. Daniel v. Curtin*, 499 F. App'x. 400 (6th Cir. 2012).

In his seventh claim, Petitioner argues that defense counsel was ineffective for failing to investigate the medical treatment performed by paramedics on the victim at the crime scene, in order to impeach the victim's testimony that she had been injured during the incident. Petitioner is not entitled to relief on his claim for several reasons. First, Petitioner presented no evidence that the victim did not receive medical treatment for injuries from the paramedics or that their report would suggest that the victim had fabricated these allegations. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). A defense attorney has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams*, 376 F. 3d 520, 527 (6th Cir. 2004) (internal quotation omitted). Petitioner presented no evidence to this Court or to the state courts that the paramedic report contained exculpatory information.

Second, any such evidence would have at best been cumulative of evidence that had already been introduced to challenge the victim's credibility, including her own admission that she did not want to go to the hospital. Petitioner was not prejudiced by counsel's failure to call the paramedics or introduce their report because such evidence was cumulative of other evidence and witnesses presented at trial in support of Petitioner's claim that the victim had lied about the nature of her injuries and had fabricated the charges against the Petitioner. *Wong*, 558 U.S. at 22–23. *See also United States v. Pierce*, 62 F. 3d 818, 833 (6th Cir. 1995). Because the jury was "well acquainted" with evidence that would have supported Petitioner's claim that the victim fabricated these charges, additional evidence in support of Petitioner's defense "would have offered an

insignificant benefit, if any at all." *Wong,* 558 U.S. at 23. Petitioner is not entitled to relief on his seventh claim.

In his eighth claim, Petitioner alleges he was constructively denied the assistance of counsel during the second day of his two day preliminary examination, where his counsel refused to further question the victim. On the first day of the preliminary examination, defense counsel extensively cross-examined the victim and Officer Blake Hiben. Tr. 10/18/10 at 18–24, 29. Defense counsel requested a continuance of the preliminary examination to obtain a statement made by the victim in order to determine whether he needed to further cross-examine her about the statement. *Id.* at 29–32.

At the beginning of the second date of the preliminary examination there were disagreements between Petitioner and defense counsel, George Bush. Mr. Bush did state "I am not going to do anything today" and then stated "I'm not going to be your lawyer today[.]" and "You can and get another lawyer." Tr. 11/30/10 at 36. Petitioner made it clear he wanted another lawyer. *Id.* at 36–37. The examining magistrate judge informed Petitioner she did not have the authority to excuse Mr. Bush, only the circuit court could. The prosecutor indicated that after the first preliminary examination date, defense counsel had requested the victim's transcribed statement but after reviewing it, decided that he had no additional questions for her. Defense counsel confirmed that he had no additional questions for the victim after reviewing her statement. *Id.* at 37. After further discussion between the judge and Petitioner, Petitioner indicated he had a conflict with defense counsel but the judge again indicated that he would have to take it up with the circuit court judge. The judge explained to Petitioner that defense counsel had made a strategic decision after reviewing the victim's statement not to cross-examine her further. *Id.* at 37–46. When the prosecutor moved for the case to be bound over to the circuit court, defense counsel opposed the

motion for bind over, especially as to counts three, four, and five. *Id.* at 46. The Michigan Court

of Appeals rejected the claim:

> In this case, all the preliminary examination testimony was presented on October 18, 2010, the first day of the preliminary examination. The October 18 transcript indicates that defense counsel cross-examined the prosecution's witnesses. The prosecution's case was, therefore, subjected to adversarial testing. See *Ford v. Wainwright,* 477 U.S. 399, 426; 106 S Ct 2595; 91 L.Ed.2d 335 (1986) (Powell, J., concurring)(explaining that cross-examination is an "ordinary adversarial" procedure). To the extent that defendant argues that trial counsel did not sufficiently cross-examine the prosecution's witnesses, defendant has not overcome the strong presumption that counsel rendered effective assistance on a matter of trial strategy. See *People v. Horn*, 279 Mich.App 31, 39; 755 NW2d 212 (2008). Moreover, at the conclusion of the final day of preliminary examination, trial counsel argued against the bind over with respect to counts three, four, and five. We conclude that defendant's second claim of ineffective assistance is without merit.

*People v. Hoover*, 2013 WL 45647, at * 7.

In the present case, where defense counsel entirely fails to subject the prosecution's case to "meaningful

adversarial testing," there has been a constructive denial of counsel, and a defendant need not make

a showing of prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer,* 286 F. 3d

851, 860 (6th Cir. 2002) (*quoting United States v. Cronic,* 466 U.S. 648, 659 (1984)). However,

in order for a presumption of prejudice to arise based on an attorney's failure to test the

prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without

any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete."

*Bell v. Cone,* 535 U.S. 685, 697 (2002).

In the present case, counsel's alleged errors did not rise to the level of the constructive

denial of counsel, because counsel actively represented Petitioner at his preliminary examination

and again at trial. *Moss,* 286 F. 3d at 860–62. In the present case, defense counsel's failure to more

thoroughly cross-examine the victim at the preliminary examination did not amount to the

constructive denial of counsel because counsel did extensively question the victim on the first day

of the preliminary examination and then opposed the prosecutor's motion to bind the case over for trial. *See Burgess v. Booker*, 526 F. App'x. 416, 432–33 (6th Cir. 2013). Petitioner would thus be required to show that he was prejudiced by counsel's failure to more thoroughly cross-examine the victim at the preliminary examination. *Id.* Because he has made no such showing, he is not entitled to relief on his eighth claim. *Id.*

## C.

In his third claim, Petitioner claims that the trial court violated the *Ex Post Facto* Clauses of the United States and Michigan Constitutions by imposing a $ 130.00 assessment under the Crime Victim's Rights Act (CVRA), Mich. Comp. Laws § 780.751 *et seq*. Petitioner claims that because the crime was committed before December 16, 2010, he should have been subject to only a $ 60.00 assessment.

Petitioner's challenge to the imposition of fines and costs by the sentencing court is non-cognizable on habeas review. Where a habeas petitioner is not claiming the right to be released but is challenging the imposition of a fine or other costs, he or she may not bring a petition for writ of habeas corpus. *See United States v. Watroba*, 56 F. 3d 28, 29 (6th Cir. 1995). *See also U.S. v. Mays,* 67 F. App'x. 868, 869 (6th Cir. 2003) (district court lacked subject matter jurisdiction over defendant's § 2255 post-judgment motion to reduce or rescind fine levied in criminal judgment; defendant was not in custody, as required in a motion to vacate sentence or a petition for a writ of habeas corpus). Petitioner's third claim is non-cognizable.

## D.

Petitioner in his fourth and fifth claims argues that there was insufficient evidence to support his convictions for torture and first-degree home invasion. It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable

doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318–19 (internal citation and footnote omitted) (emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

In his fourth claim, Petitioner contends that the prosecution presented insufficient evidence to sustain his conviction for torture. Mich. Comp. Laws § 750.85, the torture statute, requires the

prosecution to establish, as part of the elements of the offense, that the defendant inflicted either "great bodily injury" or "severe mental pain or suffering" upon the victim.

The Michigan Court of Appeals acknowledged that the victim did not suffer "great bodily injury" within the meaning of the torture statute. *People v. Hoover*, 2013 WL 45647, at * 4. The Michigan Court of Appeals concluded that the victim suffered "severe mental pain or suffering" within the meaning of Mich. Comp. Laws § 750.85(2)(d), to sustain his torture conviction. *Id.* at * 5:

> In this case, the victim testified that defendant grabbed her shirt and exposed her breast to his friends, which embarrassed her. Defendant later pushed her and threw her cellular telephone at her. Defendant then grabbed her from behind around the neck and put her in a chokehold. Unable to break free, the victim became lightheaded, her knees buckled, and she fell to the floor. Although the victim tried to stand up, defendant would not let her. At some point, defendant got a cold towel and threw it on the victim's face, for which one could reasonably infer was for the purpose of reviving the victim. Defendant then grabbed a pillow and held it down over the victim's face with his foot so that she could not breathe. As the victim was being suffocated, she could hear defendant on a telephone stating, "I'm going to kill this ... bitch," "I ain't going to save her," and she "should be out of here" in 15 minutes. The victim testified that she thought she was going to die. Once police officers arrived and the pillow was released from the victim's face, the victim was in a state of hyperventilation. She was having a "very difficult time breathing" and was gasping for air. Officer Joseph Grigg testified that the victim was emotional when he observed her at the scene of the assault, and another witness testified that the victim was "in tears." Evidence at trial illustrated that the victim had been hit in the mouth, suffered a black right eye, injured her neck, and had marks on her arm as a result of the assault. According to the victim, she suffered emotionally because of the assault. She became scared and "didn't want [her] son to be out of [her] sight." She also sought spiritual assistance from her pastor to cope with the aftermath of the assault.

> Viewing this evidence in a light most favorable to the prosecution and drawing all reasonable inferences in support of the jury's verdict, we conclude that the evidence presented at trial was sufficient for a rational trier of fact to find beyond a reasonable doubt that the victim suffered severe mental pain or suffering. Defendant's choking and smothering of the victim with the pillow while stating that he would kill her was sufficient evidence to show a "threat of imminent death." MCL 750.85(2)(d)(iii). Moreover, when considering the brutal nature of defendant's conduct in conjunction with the various evidence at trial regarding the impact of defendant's conduct on the victim, a rational trier of fact could reasonably

infer that the victim suffered a mental injury that resulted in a "substantial alteration of mental functioning that is manifested in a visibly demonstrable manner." MCL 750.85(2)(d).

*Id.* at * 5 (internal footnote omitted).

To support a conviction for torture based on severe mental pain or suffering, the prosecution must present evidence that the defendant caused "'a mental injury that result[ed] in a substantial alteration of mental functioning that [was] manifested in a visibly demonstrable manner...'" *People v Schaw*, 791 N.W. 2d 743 (Mich. Ct. App. 2010) (quoting Mich. Comp. Laws § 750.85(2)(d)). Mich. Comp. Laws § 750.85(2)(d) defines "severe mental pain or suffering" as follows:

(i ) The intentional infliction or threatened infliction of great bodily injury.

(ii ) The administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt the senses or the personality.

(iii ) The threat of imminent death.

(iv ) The threat that another person will imminently be subjected to death, great bodily injury, or the administration or application of mind-altering substances or other procedures calculated to disrupt the senses or personality.

In the present case, there was sufficient evidence for a rational trier of fact to conclude that the victim suffered a severe mental injury that resulted in a substantial alteration of mental functioning, so as to support the torture conviction. *See King v. Wood*, No. 2:14-CV-100, 2016 WL 3124613, at * 4 (W.D. Mich. June 3, 2016). The Petitioner's choking and smothering the victim with a pillow while threatening to kill her also showed a threat of imminent death, so as to support the Petitioner's torture conviction. *Id.* The Petitioner is not entitled to relief on his fourth claim.

In his fifth claim, Petitioner argues that there was insufficient evidence to sustain his conviction for first-degree home invasion, because there was no evidence he actually broke into the victim's house. Mich. Comp. Laws § 750.110a(2) states that:

> A person who breaks and enters a dwelling with intent to commit a felony or a larceny in the dwelling or a person who enters a dwelling without permission with intent to commit a felony or a larceny in the dwelling is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

Michigan's first-degree home invasion statute includes all of the elements of the burglary of a dwelling, but also requires that the defendant be armed with a dangerous weapon and/or that the dwelling be occupied. *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004) (citing *United States v. Garcia-Serrano,* 107 F. App'x. 495, 496-97 (6th Cir. 2004)). Michigan's first- degree home invasion statute does not require that there be a "breaking," as the petitioner suggests. Instead, a defendant's act of entering without permission with the intent to commit a felony is sufficient to support a conviction of first degree home invasion. *See Holtgrieve v. Curtis,* 174 F. Supp. 2d 572, 583 (E.D. Mich. 2001).

Petitioner raised this claim on his post-conviction motion for relief from judgment. The judge rejected the claim, noting that the victim testified that Petitioner had "pushed up" the storm door before entering her house. *People v. Hoover,* No. 10-035183-FC, * 4 (Sept. 30, 2015). In any event, the victim testified that Petitioner entered her house without her permission while she was at home. The mere fact that Petitioner may have had permission in the past to enter the victim's home does not establish that he had permission to be inside of her home that night, particularly in light of the fact that there was no evidence that the victim had invited petitioner over to her home.

*See e.g. Holtgreive v. Curtis,* 174 F. Supp. 2d at 584. There was sufficient evidence to sustain

Petitioner's conviction of first degree home invasion. Petitioner is not entitled to relief on his fifth

claim.

**E.**

Petitioner next contends that the prosecutor committed misconduct when she argued in her

opening statement that the victim received oxygen treatment from paramedics on the scene, but

failed to produce any evidence at trial to support her argument.

The Michigan Court of Appeals rejected the claim:

> Here, the prosecutor did not provide any evidence at trial to support her statement
> that the victim was treated with oxygen after the assault. However, there is nothing
> in the record to suggest that the prosecutor's statement was made in bad faith. In
> fact, the prosecutor attempted to elicit information from both the responding officer
> and the victim about the treatment that she received from emergency personnel after
> the assault. This indicates that the prosecutor attempted, albeit unsuccessfully, to
> obtain testimony to support her opening statement.

> More importantly, there is nothing in the record to suggest that defendant was
> denied a fair trial because of the prosecutor's opening statement. The victim and
> the responding officer repeatedly testified that the victim struggled to breathe
> immediately after the assault, which clearly indicates the lack of oxygen. Thus, the
> prosecutor's statement about oxygen treatment did not introduce an entirely
> unsupported issue to the jury; rather, the statement discussed a collateral fact to an
> issue that was repeatedly mentioned at trial. In addition, the prosecutor's reference
> to oxygen treatment was isolated and not repeated during trial. Further, the trial
> court instructed the jury that the attorneys' statements are not evidence, and jurors
> are presumed to follow this instruction. Therefore, we conclude that defendant was
> not denied a fair trial because of the prosecutor's erroneous comment during
> opening statement.

*People v. Hoover*, 2013 WL 45647, at * 6 (internal citation omitted).

Not every variance between the advanced description of the prosecutor in the opening

statement of the summary of the testimony that he or she expects to introduce and the actual

presentation constitutes reversible error, when a proper limiting instruction is given. *See Frazier*

*v. Cupp*, 394 U.S. 731, 736 (1969). In the present case, the trial court instructed the jurors both at

the beginning and the end of trial that the lawyers' opening statements were not evidence. Tr. 10/26/11 at p. 97; Tr. 11/2/11 at 5. A jury must be presumed to have followed a trial court's instructions. *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000). In this case, any variance between the prosecutor's opening statement and the evidence introduced at trial did not prejudice petitioner, in light of the trial court's limiting instruction to the jury. *See United States v. Campbell,* 317 F. 3d 597, 606–07 (6th Cir. 2003). Moreover, Petitioner is not entitled to relief because the remark about the oxygen was isolated and there was no evidence that the prosecutor deliberately attempted to inject a comment into her opening remarks that was not supported by the evidence. *See United States v. Ham*, 628 F.3d 801, 810–11 (6th Cir. 2011). Petitioner is not entitled to relief on his sixth claim.

### F.

Petitioner finally contends that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence to convict him of first-degree home invasion that he raises in his fifth claim. The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In light of the fact that there was sufficient evidence to support Petitioner's first-degree home invasion conviction (see Section D., *infra*), appellate counsel was not ineffective for failing to raise this claim on his appeal of right. *See Hand v. Houk*, 871 F.3d 390, 415-16 (6th Cir. 2017). Petitioner is not entitled to relief on his ninth claim.

### IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the Petitioner's claims. *Id.* at 336-37.[2]

Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. Because any appeal would be frivolous, Petitioner will likewise not be granted leave to proceed *in forma pauperis* on appeal. *See* Fed.R.App. P. 24(a).

## V.

Accordingly, it is **ORDERED** that the amended petition for writ of habeas corpus, ECF No. 7, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

---

[2] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is

**DENIED.**

Dated: April 9, 2018                                     s/Thomas L. Ludington
                                                                  THOMAS L. LUDINGTON
                                                                  United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on April 9, 2018.

                                        s/Kelly Winslow
                                        KELLY WINSLOW, Case Manager